**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
CHELSEA J. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_CJCChambers@mdd.uscourts.gov
(410) 962-4560

June 2, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:     *Lisa Marie Parker v. Frank Bisignano, Commissioner, Social Security Administration*
        Civil No. CJC-25-1975

Dear Counsel:

Plaintiff/Claimant Lisa Marie Parker petitions this Court for review of the Commissioner of the Social Security Administration's (the "Commissioner") final decision involving her claim for disability insurance benefits ("DIB"). ECF No. 1. After Parker filed her brief in support of the petition for review, the Commissioner filed a Motion to Remand, to which Parker opposed. ECF Nos. 12, 15–16. The Court has considered the record and the parties' briefs. ECF Nos. 9, 12, 15–16. No hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the Court reverses and remands the Commissioner's decision to the Social Security Administration for further proceedings.

## I.     PROCEDURAL BACKGROUND

Parker filed an application for DIB under Title II of the Social Security Act on June 15, 2021, alleging disabilities that began on August 24, 2019. R. 189. Parker's claim was denied initially and on reconsideration. R. 88–92, 94–97. On Parker's request, an Administrative Law Judge ("ALJ") held a hearing to review her claim. R. 41–70, 103–04. Following the hearing, on June 28, 2024, the ALJ issued a decision finding that Parker was not disabled. R. 16–40. Parker requested that the Social Security Appeals Council review the ALJ's decision. R. 186–88. On May 1, 2025, the Appeals Council denied Parker's request for review, rendering the ALJ's decision the final, reviewable decision of the Social Security Administration. R. 3–8. Parker then timely petitioned for judicial review in this Court on June 20, 2025. ECF No. 1.

## II.     THE ALJ'S DECISION

A claimant is legally disabled under the Social Security Act if they are unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The ALJ must conduct a five-step sequential evaluation to determine if a claimant is disabled. *Hancock v.*

*Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "For the first four steps, the burden lies with the claimant; at step five, it shifts to the Commissioner." *Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019), *as amended* (Feb. 22, 2019). The ALJ reviews whether the claimant "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock*, 667 F.3d at 472 (citing 20 C.F.R. § 404.1520(a)(4)). Prior to steps four and five, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which is the most work a claimant can do despite their physical and mental limitations. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017).

The ALJ here conducted the sequential evaluation as follows. At step one, the ALJ determined that Parker "did not engage in substantial gainful activity during the period from her alleged onset date of August 24, 2019 through her date last insured of June 30, 2022." R. 21. At step two, the ALJ found that Parker had the following severe impairments: "traumatic brain injury; post-concussion syndrome; major depressive disorder; generalized anxiety disorder; schizoaffective disorder, bipolar type; obesity; and sciatica." R. 22. Notably, the ALJ found Parker's vision impairments of bilateral myopia and bilateral retinal lattice degeneration non-severe. R. 22–23. At step three, the ALJ determined that Parker "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 24. The ALJ further determined that Parker had the residual functional capacity ("RFC") to

> perform medium work as defined in 20 CFR 404.1567(c) except the claimant can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She should never climb ladders, ropes, or scaffolds. She can have occasional exposure to workplace hazards, such as open machinery and unprotected heights. She can occasionally operate motor vehicles as part of work duties. She can work in environments with occasional changes in workplace settings and routines.

R. 27. At step four, the ALJ determined that Parker did not have any past relevant work. R. 34. At step five, the ALJ found that, considering Parker's "age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Parker] could have performed." R. 34. As a result, the ALJ concluded that Parker was not disabled. R. 35.

III.    **DISCUSSION**

Both parties assert that remand of the ALJ's decision is appropriate in this case, but they disagree on the type of remand the Court should order. The Commissioner asks the Court to remand the case for further administrative proceedings. ECF No. 15 at 1. For her part, Parker requests that the Court remand the case for the limited purpose of awarding benefits to Parker. ECF No. 12 at 11.[1]

---

[1] Parker alternatively requests that the Court remand the case for further proceedings. ECF No. 12 at 11.

A federal court reviewing a final decision of the Commissioner may enter a judgment "reversing the decision of the Commissioner … with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A Court should remand without further proceedings and order an award of benefits only in "rare circumstances," however. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citation omitted). The infrequency with which courts order an award of benefits stems from the general rule that courts cannot "reweigh conflicting evidence, make credibility determinations, or substitute [their] judgment for that of the [ALJ]" or "engage in these exercises in the first instance." *Id.* at 296 (citation omitted). Accordingly, courts only award disability benefits "where the record clearly establishes the claimant's entitlement to benefits and another ALJ hearing on remand would serve no useful purpose." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 111 (4th Cir. 2020). On the other hand, if "there is at least conflicting evidence in the record" as to whether a claimant is entitled to benefits, then remand for further proceedings is warranted. *Radford*, 734 F.3d at 296; *see also Carr v. Kijakazi*, No. 20-2226, 2022 WL 301540, at *5 (4th Cir. Feb. 1, 2022).

Parker contends that this case is the rare circumstance in which an order for an award of benefits is warranted because the record clearly establishes that, at step three of the sequential evaluation, Parker's visual impairments satisfy Social Security Listing 2.03B. ECF No. 12 at 9–10. Step three of the sequential evaluation concerns the "Listing of Impairments," which describes impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 404.1525(a). If a claimant's impairments meet or equal one of the listings in the Listing of Impairments, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Impairments meet a listing if they satisfy all the criteria of the listing and the durational requirement. 20 C.F.R. § 404.1525(c)(3). Impairments equal a listing if they are "at least equal in severity and duration to the criteria of any list[ing]." 20 C.F.R. § 404.1526(a).

A claimant meets Listing 2.03B by presenting evidence of "[c]ontraction of the visual field in the better eye." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.03. A claimant establishes contraction of the visual field under Listing 2.03B if (1) the visual field loss reaches a mean deviation or defect "of 22 decibels or greater"; (2) the visual field loss is measured by an "acceptable automated static threshold perimetry that measures the central 30 degrees of the visual field"; (3) the test results are reliable; and (4) the test results are valid. *Id.* § 2.03B, 2.00.A.6.d; SSR 07-01P, 2007 WL 2215467, at *2–3 (July 31, 2007);[2] *see also Hill v. Saul*, No. CV 1:18-00326-N, 2019 WL 4308766, at *8 (S.D. Ala. Sep. 11, 2019).

Whether Parker clearly satisfies the criteria of Listing 2.03B turns on the results of a visual field test conducted by Dr. Fadi Nasrallah. R. 1648–53. The test revealed a mean deviation or defect of 22.65 decibels in the left eye and 26.28 decibels in the right eye. R. 1651–52. The test was conducted using a "Central 30-2 Threshold Test." R. 1651–52.

---

[2] "Social Security Rulings, or SSRs, are interpretations by the Social Security Administration of the Social Security Act." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 n.9 (4th Cir. 2021) (citation modified), *superseded by regulation on other grounds as stated in Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604 (4th Cir. 2025). "They do not carry the force of law but are binding … on ALJs when they are adjudicating Social Security cases." *Id.* (citation modified).

Based on these facts, the first two criteria appear to be satisfied. The first criterion appears to be satisfied because the test found that the mean deviation or defect in both of Parker's eyes was greater than 22 decibels. The second criterion also appears to be satisfied because the Central 30-2 Threshold Test used by Dr. Nasrallah is an acceptable automated static threshold perimetry test. SSR 07-01P, 2007 WL 2215467, at *2; *Hill*, 2019 WL 4308766, at *9.

There are disputes of fact, however, as to whether the third criterion—reliability—is satisfied. The Commissioner considers three factors to determine whether test results are reliable: "fixation losses, false positive errors, and false negative errors.... The test results are not reliable for evaluating visual field loss if the fixation losses exceed 20 percent, or if the false positive errors or false negative errors exceed 33 percent." SSR 07-01P, 2007 WL 2215467, at *2. Here, the results of the left eye (the better eye) indicated a fixation loss of 31 percent, a false positive probability of 15 percent, and a false negative probability of 85 percent. R. 1651. Thus, the fixation loss and false negative probabilities exceed the percentages at which the Commissioner would typically find test results reliable. On the other hand, Dr. Nasrallah found that the test results displayed "[g]ood [r]eliability." R. 1650. Given these disputed facts, Parker has not clearly satisfied the third criterion of Listing 2.03B.

There are also disputes as to whether the fourth criterion—validity—is satisfied. The Commissioner "will not use the test results to evaluate visual field loss if there is other information in the case file that suggests that the results are not valid; for example, the test results are inconsistent with the clinical findings or the individual's daily activities." SSR 07-01P, 2007 WL 2215467, at *3. There are disputed facts as to whether the clinical findings and Parker's daily activities are inconsistent with the test results. Regarding clinical findings, for example, the ALJ pointed out that while some medical providers determined Parker had visual acuity over the full visual field, others concluded that she was "[u]nable to see in all four quadrants" of the visual field. R. 22 (citing R. 1783, 1799). As to Parker's daily activities, the ALJ noted that Parker reported in a July 19, 2023, medical exam that she drove short distances, but later reported in a January 8, 2024, medical exam that she no longer drove for safety reasons and that her eye doctor recommended she stop driving. R. 22 (citing R. 1781, 1974). Because there is at least conflicting evidence as to the validity of the visual field test based on these facts, Parker has not clearly satisfied the fourth criterion of Listing 2.03B.

Because there is conflicting evidence as to whether Parker's visual impairments satisfy the third and fourth criteria of Listing 2.03B, the record does not clearly establish Parker's entitlement to benefits. As a result, the Court declines to remand this case for an order awarding benefits. Nevertheless, "[i]t appears that the Commissioner concedes harmful error in the ALJ's decision." *Kimberly C. v. O'Malley*, Civil Action No. SAG-21-0873, 2025 WL 316234, at *3 (D. Md. Jan. 27, 2025); *see* ECF No. 15 at 1 ("Upon further review of this case, [the Commissioner] believes that a remand is warranted for further administrative proceedings."). Given this concession and the seriousness of the visual impairments Parker highlights in the record, remand for further proceedings is appropriate to determine the severity of Parker's visual impairments and whether she meets any listings involving visual acuity. The Court expresses no opinion as to whether the ALJ's ultimate conclusion regarding Parker's entitlement to benefits is correct.

**IV.      CONCLUSION**

For the reasons set forth herein, the Court GRANTS the Commissioner's Motion to Remand. ECF No. 15. Pursuant to sentence four of 42 U.S.C. § 405(g), the Social Security Administration's judgment is REVERSED. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Chelsea J. Crawford
United States Magistrate Judge

5